UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.  § | CAUSE NO. 21-MJ-2051-MAT |
| § | |
| HECTOR ALFREDO OLIVAS § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Defendant Hector Olivas ("Defendant") was charged in September 2021 with Possession with Intent to Distribute methamphetamine and fentanyl. He was evaluated by a psychologist and found not competent by this Court in February 2022. On March 3, 2022, the Court ordered his transportation to a suitable facility within the Federal Bureau of Prisons ("BOP"), for a period not to exceed four months, to determine whether his competency could be restored. As of October 2022, he had not been transported, a delay of nearly eight months. On September 28, 2022, Defendant moved to dismiss his case, asserting that the length of his delayed transportation violated his constitutional right to a speedy trial. The Government responded, arguing that there was no speedy trial violation. The Court finds that the Defendant's right to a speedy trial pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, was violated and **DISMISSES** the criminal complaint **WITHOUT PREJUDICE**.

### I.     BACKGROUND & PROCEDURAL HISTORY

On September 17, 2021, Defendant was charged with possessing with intent to distribute 3.2 kilograms of methamphetamine and 0.3 kilograms of fentanyl, in violation of 21 U.S.C. §§ 841, 846. (ECF No. 1, p. 1-2). On October 19, 2021, Defendant moved for a psychiatric

1

examination to determine whether he was competent to stand trial, pursuant to 18 U.S.C. § 4241. (ECF No. 11). The resulting report, by Dr. Cynthia Rivera, found Defendant to be competent. (ECF No. 15). However, at a Mental Competency Hearing held after Dr. Rivera's report was submitted to the Court, (ECF No. 18), the parties agreed to have an additional examination performed by a different mental health expert, which the Court then ordered. (ECF No. 17).[1] On February 7, 2022, this subsequent examination was performed by Dr. James Schutte, who determined that Defendant was not competent. (ECF Nos. 23, 26). As required by statute, after a February 24, 2022 hearing, the Court on March 3, 2022 ordered Defendant to be committed to the custody of the Attorney General to be transferred to a suitable facility for "a reasonable period of time, not to exceed four (4) months" to determine whether there was a "a substantial probability that in the foreseeable future Defendant [would] attain the capacity to permit the trial to proceed." (ECF No. 27, p. 1, 3 (citing 18 U.S.C. § 4241(d)).[2]

On September 28, 2022, Defendant filed his Motion to Dismiss asking the Court to dismiss the Criminal Complaint on due process and speedy trial grounds, noting that the Defendant had not been transferred since the Court's March 3 Order, a delay of over six months at the time of the Motion's filing. (ECF No. 39). The Government responded and submitted a declaration from Dr. Dia Boutwell, Forensic Evaluation Coordinator for the BOP, which details the purported reasons for the delays experienced by Defendant and similarly situated individuals waiting for court-ordered evaluation and competency restoration treatment. (ECF No. 43). In

---

[1] Dr. Rivera's report did not consider Defendant's history of competency proceedings in a prior federal criminal case, which may not have been available to her when she conducted the examination. (ECF No. 19, p. 2 n.1). In *United States v. Olivas*, EP-12-CR-00774-DB-1, Defendant was charged with Possession with Intent to Distribute over two pounds of heroin. EP-12-CR-00774-DB-1, (ECF No. 1). In that case, he was found to be incompetent and was committed to a BOP facility to determine if his competency could be restored. EP-12-CR-00774-DB-1, (ECF No. 24). After that commitment and a subsequent hearing, the District Court dismissed the case on May 29, 2013. EP-12-CR-00774-DB-1, (ECF No. 39).

[2] When a criminal defendant is found to be incompetent to stand trial, courts must commit them to the custody of the Attorney General to be hospitalized to determine whether they can regain competency before trial. 18 U.S.C. § 4241(d). The length of this hospitalization may not exceed four months. *Id.*

explaining the causes of the delays, the Declaration focuses on the small number of BOP facilities capable of providing competency restoration services, the staffing and bed space issues that they are experiencing, and the increased need for the services "over the years." *Id.* ¶4. The Declaration also alludes to certain "pipeline"-disrupting events that can further extend the delays. *Id.* ¶5. The Court held a hearing on the Motion to Dismiss on October 18, 2022. (ECF No. 44).[3]

Defendant was in the custody of the U.S. Marshals Service, awaiting transfer to competency restoration services, from March 3, 2022 until October 19, 2022, the date of the Court's Order dismissing the Criminal Complaint.[4]  (ECF No. 27, Text Order dated Oct. 19, 2022).  Defendant was never indicted in this case.  (ECF No. 39, p. 1).  The parties agreed to waive the time limit to indict under the Speedy Trial Act on three occasions (ECF No. 42, p. 2 n.1); only the third was filed with the Court, on February 8, 2022. (ECF No. 22).  The last of these agreed waivers expired on April 17, 2022. (ECF No. 39, p. 7 n.3).

The Court granted the Motion and dismissed the Criminal Complaint in a Text Order on October 19, 2022, in which it indicated that a written opinion would follow.  (Text Order dated Oct. 19, 2022).  Thus, for Speedy Trial Act purposes, the delay at issue in this case is the 185 days between the expiration of Defendant's final stipulated waiver and the Order of Dismissal.[5]

## II. DISCUSSION

---

[3] The Government stated in its Response that transfer of Defendant to a BOP facility was not anticipated until November 15, 2022. (ECF No. 42, p. 6). A few hours after the October 18 hearing on Defendant's Motion, the Court was informed via email by the U.S. Marshals Service that Defendant was slated to be transferred to a BOP facility on October 20.

[4] On October 19, 2021, the Court set a $20,000 signature bond in this case.  (Oral Order dated Oct. 19, 2021). However, on November 9, 2021, the Court's Pretrial Services Office informed the Court that that Dismas Charities, the halfway house in El Paso where the Court ordered Defendant to reside, could not accept his placement there because of his psychological issues.  As a result, Defendant remained in custody.

[5] "The time-computation rules provided in the Federal Rules of Criminal Procedure apply to the Speedy Trial Act." *United States v. Hernandez-Amparan*, 600 F. Supp. 2d 839, 841 n.1 (W.D. Tex. 2009).  Rule 45, in turn, excludes from the speedy trial calculation "the day of the event that triggers the period." Fed. R. Crim. P. 45(a)(1).

Defendant's Motion argues that the Criminal Complaint should be dismissed because his delayed transfer to competency restoration services violated his constitutional rights to due process and a speedy trial.  More specifically, he asks this Court to adopt the recent Ninth Circuit holding in *United States v. Donnelly*, 41 F. 4th 1102, 1106 (9th Cir. 2022) and construe any delay in transportation to competency restoration treatment that lasts longer than the maximum four-month time period allowed for the treatment itself to be a violation of his due process rights under the Fifth Amendment of the United States Constitution.  Alternatively, Defendant argues that the case should be dismissed pursuant to the Speedy Trial Act, which provides, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  18 U.S.C. § 3161(b).  Additionally, he argues that dismissal for a speedy trial violation is appropriate under the common law test enunciated in *Barker v. Wingo*, 407 U.S. 514, 530 (1972) and Federal Rule of Criminal Procedure 48(b).

In response, the Government argues first that no statutory violation of § 4241(d) has occurred, as the four-month limitation for hospitalization under that subsection begins only when a defendant begins his hospitalization.  The Government also contends that there was no violation of the Speedy Trial Act, as the law excludes from the speedy trial calculation any period of time spent transporting a defendant to a court-ordered examination or hospitalization. In the alternative, the Government argues that the causes of the delay in Defendant's transportation were "reasonable" and should therefore be excluded from the calculation even if the Court decides to apply the presumption of unreasonableness for delays in transportation beyond ten days that is set out in 18 U.S.C. § 3161(h)(1)(F).  Finally, the Government disputes

that the Court should find a violation of the constitutional right to a speedy trial under either the common law test set out in *Barker* or Federal Rule of Criminal Procedure 48(b).

As an initial matter, the Court addresses Defendant's claim that the Government violated the Speedy Trial Act by not indicting Defendant within thirty days of April 17, 2022, the expiration of the parties' final stipulated waiver of time to indict.

### A. Speedy Trial Act, 18 U.S.C. § 3161

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Speedy Trial Act gives effect to this right by setting deadlines within which defendants must be indicted after arrest, and within which they must be brought to trial after indictment. 18 U.S.C. § 3161(b-c). Among these deadlines is the requirement that the government must indict a defendant within thirty days of their arrest or service of summons. 18 U.S.C. § 3161(b). However, at § 3161(h), the Speedy Trial Act provides that certain periods of time are "excludable" for purposes of determining whether the government violated the time limits in the Act. At issue in this case are two of these provisions that potentially exclude certain periods of time relating to delayed transportations to court-ordered examinations:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--

> (A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

  ….

>(F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

….

18 U.S.C. § 3161(h).  While § 3161(h)(1)(A) is a broader provision excluding from the speedy trial calculation any amount of time related to determinations of mental or physical capacity of the defendant, § 3161(h)(1)(F) presents a stricter, seemingly less flexible exclusion of time wherein the first ten days of a delay are excludable, but any additional delay is presumed unreasonable.  18 U.S.C. § 3161(h)(1)(F).

The apparent applicability of both the more general § 3161(h)(1)(A) and the more time-specific § 3161(h)(1)(F) to delays in transportation of defendants to court-ordered examinations or hospitalizations presents a conflict on which the circuits are split.  *Compare United States v. Williams*, 917 F.3d 195, 201-03 (3d Cir. 2019) (holding that delays beyond ten days for transportation to court-ordered competency determinations are subject to the presumption of unreasonableness in § 3161(h)(1)(F)), *with United States v. Vasquez*, 918 F.2d 329, 333 (2d Cir. 1990) (holding that the presumption of unreasonableness in § 3161(h)(1)(F) did not apply to a delay in transportation to an examination and that the *entire* period was excluded from the Speedy Trial Act calculation under § 3161(h)(1)(A)).[6]

---

[6] In *Williams*, the Third Circuit reasoned that, because both subsections apply to court-ordered competency determinations, "interpreting section 3161(h)(1)(A) to exclude any and all periods of delay in transporting a defendant to the site of a psychological examination—regardless of whether such delay is in excess of ten days and otherwise unreasonable—would read section 3161(h)(1)(F) out of the statute." 917 F.3d at 202-03.  As explained

B.  *United States v. Castle*

The Fifth Circuit squarely addressed the issue presented in this case in *United States v. Castle*, 906 F.2d 134 (5th Cir. 1990). *Castle* presented the question of whether § 3161(h)(1)(A) or § 3161(h)(1)(F) applied to a delay in transportation to a court-ordered competency evaluation. *See* 906 F.2d at 137. The court chose to apply the more exacting § 3161(h)(1)(F) and its presumption of unreasonableness, rather than exclude the entire period from the speedy trial calculation under § 3161(h)(1)(A). *See id.* While Defendant's Motion does not mention *Castle*, and the Government's Response acknowledges it only in passing, *Castle* is binding authority and is dispositive of the Speedy Trial Act issues presented in this case.

In *Castle*, a defendant's transfer to a hospital for a court-ordered competency evaluation took twenty-two days from the date that the court ordered the commitment. 906 F.2d at 135-36. The defendant filed a motion with the district court prior to trial, with the government responding that a "budgetary crunch due to the Gramm-Rudman bill" prevented it from promptly transporting the defendant. *Id.* at 136. The district court denied the motion, and the defendant was tried and convicted. *Id.* The Fifth Circuit cited both subsections § 3161(h)(1)(A) and § 3161(h)(1)(F) as being generally applicable to the delay in transfer but held that the excludable time from this period was subject to the presumption of unreasonableness for portions of delays exceeding ten days in § 3161(h)(1)(F).[7] *Id.* at 136-37. Accordingly, the Fifth Circuit found that, of the twenty-two days between the order of commitment and the defendant's arrival at the evaluation site, only ten could be excluded from the Speedy Trial Act calculation unless the

---

further below, the Court concluded that rendering § 3161(h)(1)(F) "superfluous" in this way is incompatible with fundamental canons of statutory construction. *Id.*

[7] Another Judge in this division applied § 3161(h)(1)(F) and the holding in *Castle* in dismissing a case involving a delayed transfer to competency restoration treatment that was ordered pursuant to 18 U.S.C. § 4241(d). *See Hernandez-Amparan*, 600 F. Supp. 2d at 843.

government could rebut the presumption that the remainder of the delay was unreasonable. *See id.* at 137.

Significantly, the government argued that its "diligent attempts" to effectuate a transfer were sufficient to rebut the presumption. *Id.* at 138. However, the court rejected this argument, reasoning that accepting the government's proposed standard would lead to a rebuttal of the presumption "as long as the government could show that it was not acting unreasonably" and unless the government engaged in "affirmative wrongdoing." *Id.* After careful consideration of the legislative history of § 3161(h)(1)(F), the court concluded that "Congress rejected this standard when it enacted [§ 3161(h)(1)(F)] with its presumption of unreasonableness after ten days." *Id.* Instead, the court held that "the presumption . . . applies 'unless some *extraordinary event* occurred in the case to make compliance with the directions of Congress unfeasible. . . .'", stating that "ordinary institutionalized delay is not an excuse.'" *Id.* at 138 (emphasis added) (quoting *United States v. Jervey,* 630 F. Supp. 695, 697 (S.D.N.Y. 1986)).

In its Response, the Government appears to argue that the Court should decline to follow *Castle* and should instead follow the Second Circuit decision in *Vasquez* and find that the entire delay in transporting Defendant should be excluded from the speedy trial calculation pursuant to § 3161(h)(1)(A). However, it is axiomatic that this Court cannot decline to follow binding precedent of the Fifth Circuit. Furthermore, if there were any doubt that *Castle* controls in this case, the Court notes that the decision comports with canons of statutory construction followed in this circuit. Namely, the Fifth Circuit, following Supreme Court precedent, applies the "rule of superfluities," a "cardinal rule of statutory construction" under which "a statute should be interpreted so as not to render one part inoperative." *BNSF Ry. Co. v. United States*, 745 F.3d 774, 2014 WL 983196, at *786 n.89 (5th Cir. 2014) (quoting *Colautti v. Franklin*, 439 U.S. 379,

8

392 (1979)); *see also Ysleta del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (U.S. 2022) (quoting *Corley* v. *United States*, 556 U. S. 303, 314 (2009)).  A panel of the Third Circuit in *Williams* noted that the Second Circuit approach in *Vasquez* does exactly that by holding that the § 3161(h)(1)(F) presumption is effectively read out of the statute by § 3161(h)(1)(A).  *Williams*, 917 F.3d at 195.  *Williams* rejected *Vasquez* on the grounds that "courts should avoid interpreting a statute in ways that would render certain language superfluous." *Id.* at 202.  Binding precedent of this circuit and applicable canons of statutory construction require the Court to do the same here.

### 1.  The Presumption of Unreasonableness in Section 3161(h)(1)(F)

Having decided that *Castle* controls in this case, the question then becomes whether the Government has rebutted the presumption of unreasonableness under § 3161(h)(1)(F) by showing that the delay in Defendant's transportation was precipitated by an "extraordinary event," and not merely by "ordinary institutionalized delay." *Castle*, 906 F.2d at 138.

Before analyzing whether the Government's evidence meets this standard, it is important to clarify the definition of "extraordinary event" as used in the *Castle* test.  While the *Castle* court did not elaborate on the standard, *see id.*, further guidance can be found in the decision from which the Fifth Circuit adopted the test.  In *United States v. Jervey*, 630 F. Supp. 695 (S.D.N.Y. 1986), the government argued that the delay at issue was reasonable because "no bad faith existed, and . . . it is *common* for defendants' transcontinental transportation to endure for more than ten days."  630 F. Supp. 695 at 697 (emphasis added).  The court rejected this argument, concluding that "[s]uch ordinary institutionalized delay is not an excuse," *id.*, and adding that "the facts and circumstances here indicate that the delay in transportation which is the main source of the problem here did not result from bad faith or different than ordinary and

9

regular treatment of this defendant on the Government's part." *Id.* at 698. Thus, the focus of the "extraordinary event" inquiry is whether the cause of the delay was known to or anticipated by the government at the time that it occurred; "common" causes of delay that were previously known to the Government do not suffice. *See also id.* at 697 ("Under existing conditions, three weeks for this trip is neither *unusual nor unexpected*." (emphasis added)).

Far from being uncommon or unexpected, the reasons for the delay in this case, as explained in the Government's Declaration, are universal and appear to have been known to the Government for some time. (*See* ECF No. 43 ¶4) ("There are several factors that contribute to this wait time including but not limited to, the limited number of restoration sites, staffing levels, bed space, and increased need for restoration services *over the years*." (emphasis added)). Indeed, the purported causes of the delay identified in this case are the same as those described in a declaration – also written by Dr. Boutwell – filed by the Government in a different, but factually similar case three months before this Court ordered Defendant to be committed in this case. *See* Declaration of Dia Boutwell, Ph.D. ¶4-5, *United States v. Donnelly*, 2022 WL 1488430 (D. Or. May 11, 2022) (No. 21-cr-232).[8] Thus, it cannot be said that the "finite and limited" capacity of Federal Medical Centers that allegedly delayed Defendant's confinement came as a surprise to the Government; rather, it is clear that the Government was previously aware of these delays, which are institutional in nature. (ECF No. 42, p. 7).

---

[8] The Court may take judicial notice of "a 'document filed in another court . . . to establish the fact of such litigation and related filings,' [but] a court cannot take judicial notice of the factual findings of another court." *Wooley v. Haynes & Boone, L.L.P. (In re Si Restructuring Inc.)*, 480 Fed. Appx. 327, 328 (5th Cir. 2012) (alteration in original) (quoting *Taylor v. Charter Med. Corp.,* 162 F.3d 827, 830–31 (5th Cir. 1998)); *see* Fed. R. Evid. 201. Here, the Court takes judicial notice of the declaration, not "for the truth of the statements therein," but only to show that the Government referenced the same factors that purportedly caused the delay in this case in a separate matter. *See Callan v. Deutsche Bank Trust Co. Americas*, 11 F.Supp.3d 761, 765 n.2 (S.D. Tex. 2014) (taking judicial notice of the contents of documents filed by parties in a separate case "only for the fact that they were filed").

What the Government *has* demonstrated is a system that does not have sufficient resources to address chronic delays, an undoubtedly challenging and frustrating situation for the prosecution here. (ECF No. 43 ¶8). Furthermore, the Government argues that it made diligent efforts to transfer Defendant in a timely manner in the face of these system-wide delays.[9] Assuming *arguendo* that the Government did so, the question becomes whether its explanation trumps Defendant's rights under the Speedy Trial Act. It is clear under *Castle* that it does not. As stated, *Castle* emphasized that mere diligence is not enough to rebut the presumption in § 3161(h)(1)(F), stating that "[u]nder the government's suggestion of rebutting the presumption for diligent attempts to transport the prisoner, . . . we would essentially be allowing any amount of time in transport as long as the government could show that it was not acting unreasonably." 906 F.2d at 138. Thus, the Government's explanation does not show that the delay in this case was reasonable.

The above-cited precedents demonstrate that the issue of whether an "extraordinary event" precipitated a delay in transportation is a fact-intensive inquiry that courts must determine on a case-by-case basis. The presumption of unreasonable delay that is set out in § 3161(h)(1)(F) is a rebuttable one, after all, as *Castle* makes clear. *See* 906 F.2d at 137. On the one hand, the *Castle* standard is clearly not met when the Government fails to provide any explanation for a delay in transportation. *See Hernandez-Amparan*, 600 F. Supp. 2d at 843 n.4 (citing *Castle*, 906 F.2d at 137-38). Moreover, a showing of mere "ordinary institutionalized delay" is also not sufficient to prove that a delay above ten days was reasonable. *See Castle* 906 F.2d at 138. Here, the Government's reliance on a declaration that details institutional, systemic delays and that alludes only to generalized "pipeline" delays without identifying a specific

---

[9] The Court is unpersuaded by the argument made by Defendant at the hearing that the Government acted in bad faith; there is simply no evidence in the record that the Government recklessly or intentionally delayed this matter.

11

extraordinary circumstance that affected this case will not pass muster for purposes of rebutting the presumption under § 3161(h)(1)(F) as construed by *Castle*.[10]

Having failed to show that an "extraordinary event" caused the delay in transportation in this case, the Government has not met its burden to prove that more than ten days of the transportation delay should be excluded from the Speedy Trial Act calculation. Thus, the 175 countable days between the Order of Commitment and Defendant's release violated his rights under 18 U.S.C. § 3161(b), requiring dismissal of the Complaint under 18 U.S.C. §3162(a)(1).

### C. Prejudice

"The Speedy Trial Act gives courts discretion to dismiss a case 'with or without prejudice.'" *Hernandez-Amparan*, 600 F. Supp. 2d at 843 (citing 18 U.S.C. § 3162(a)(1)). In deciding this issue, courts "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). "Trial courts have wide discretion in making this determination." *Hernandez-Amparan*, 600 F. Supp. 2d at 844 (citing *United States v. Taylor,* 487 U.S. 326, 336 (1988)).

#### 1. Seriousness of the Offense

---

[10] The Government's Declaration alludes to certain "pipeline"-disrupting events that can cause delays beyond what the Government may expect in any given case. (ECF No. 43 ¶5). However, the Government has not specifically alleged that such events played a role here. *See id.* ("[T]here are some events that *can* disrupt the order of the pipeline." (emphasis added)). It is important to note that the Government bears the burden of proving, through evidence, why a Speedy Trial Act exclusion should apply. *Hernandez-Amparan*, 600 F. Supp. 2d at 841 (first citing 18 U.S.C § 3162(a)(2); then citing *United States v. May,* 819 F.2d 531, 533 (5th Cir.1987)). At the very least, the Government must provide evidence showing what disruption occurred, how it contributed to the delay, and how much of the delay was attributable to it. Because the Government did not do so here, the Court need not consider whether individual instances of such disruptions may constitute "extraordinary events" sufficient to rebut the presumption of unreasonableness in § 3161(h)(1)(F).

Turning to the first factor, Defendant's charges are serious, carrying a potential minimum mandatory term of imprisonment of over ten years. (ECF No. 2, p. 1); *see Castle*, 906 F.2d at 138 (citing *United States v. Hawthorne,* 705 F.2d 258 (7th Cir.1983)) (noting that a charge carrying a maximum sentence of five years was "serious" for Speedy Trial Act purposes). Considering the seriousness of the offense, the Court finds that the first factor militates for dismissal without prejudice.

### 2. Facts and Circumstances Leading to Dismissal

As to the second factor, the Court is to consider the facts and circumstances that led to dismissal. There is no indication that the Government intentionally delayed Defendant's confinement, which weighs against dismissal with prejudice. *Castle*, 906 F.2d at 138-39. Moreover, the fact that the Government provided an explanation at all similarly weighs against dismissal with prejudice. *See Hernandez-Amparan*, 600 F. Supp. 2d at 844 ("Some affirmative justification must be demonstrated to warrant a dismissal without prejudice." (quoting *United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir. 1984))). Accordingly, the second factor also supports dismissal without prejudice.

### 3. Impact of Reprosecution

Finally, this Court must look to the impact that reprosecution may have on the administration of the Speedy Trial Act and the administration of justice. This factor "encompasses three concerns: [t]he defendant's right to a timely trial; the deterrent effect of a prejudicial dismissal on the Government's repeated violations of the speedy trial requirements; and the public's interest in bringing the accused to trial." *United States v. Mancia–Perez,* 331 F.3d 464, 469 (5th Cir. 2003) (citing *United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998)).

"Courts must also consider the presence or absence of prejudice to the defendant caused by the violation." *United States v. Blank*, 701 F.3d 1084, 1090 (5th Cir. 2012) (citing *Mancia-Perez*, 331 F.3d at 469). Moreover, the Fifth Circuit has noted that "[w]hen the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice." *United States v. May*, 819 F.2d 531, 534 (5th Cir. 1987).

First, there is no doubt that the 175-day delay in this case was serious. *See United States v. Mancia-Perez*, 331 F.3d 464, 470 (5th Cir. 2003) (citing *United States v. Johnson,* 29 F.3d 940, 946 (5th Cir. 1994)) (noting that a 118-day delay was considered "serious"). Accordingly, this precondition for dismissal with prejudice is met, and the Court must look to the other considerations relevant to this factor.

As to the first consideration, the defendant's right to a timely trial, there is no question that Defendant consistently asserted his right to a speedy trial throughout these proceedings, as the Government stipulated to in its Response. (ECF No. 42, p. 10). This fact weighs against dismissal without prejudice. *Cf. Blevins*, 142 F.3d at 226 (finding that the defendant's failure to "press his right to a speedy trial" weighed in favor of dismissal without prejudice).

The second consideration is the deterrent effect of a prejudicial dismissal. *Castle* noted that, while dismissal with prejudice sends a "stronger message" to the government that it needs to avoid future Speedy Trial Act violations, dismissal without prejudice is not a toothless remedy. 906 F.2d at 139 ("[D]ismissal without prejudice is not an ineffectual remedy, forcing the government to reindict in the face of statute of limitation pressures, among other things."). In addition, the Court believes that the standard for rebutting the § 3161(h)(1)(F) presumption articulated in *Castle* and reiterated in this decision sends a clear message to the government that

additional efforts to provide for the timely transfer of criminal defendants to court-ordered competency treatment are warranted; indeed, the causes of the delay in this case would likely affect future efforts to transport Defendant should the Government opt to represocute him and once again deal with the competency issues that are likely to rearise.  Thus, the Government's knowledge that mere diligence is an insufficient excuse to delay transportation beyond ten days is especially "likely to induce salutary changes in procedures."  *Id.*

Moreover, the fact that the Government provided an explanation for the delay in the instant case once again weighs against dismissal with prejudice.  In *Hernandez-Amparan*, the Government did not provide any explanation for the delayed transportation of a defendant, and the Court found dismissal with prejudice to be the appropriate remedy.  600 F. Supp. 2d at 844 ("[A]llowing reprosecution would allow the Government's clear and unexplained failure to comply with the Speedy Trial Act to go unsanctioned.").

Dismissal with prejudice is perhaps the ultimate litigation sanction short of punitive measures against a party.  The prejudice inquiry at issue necessarily involves the evaluation by a court of the Government's reasons for the delay, which could run a wide spectrum of reasons. These reasons could range anywhere from malfeasance, a complete and unwarranted neglect of the Government's obligations, a lack of any explanation whatsoever (as in *Hernandez-Amparan*), or a detailed explanation for the Government's inability to comply with its transportation obligations in an expeditious manner.  A court, with its wide discretion in assessing prejudice, must look at where the government's actions fit in this spectrum and must provide a remedy commensurate with the cause of the delay.

Turning to the third consideration, the public has a strong interest in bringing Defendant to trial in light of the nature and seriousness of the offense that he is charged with.  *See Blevins*,

142 F.3d at 226 ("The public has a great interest in bringing Blevins to trial particularly in light of his illegal possession of controlled substances despite his previous conviction.").

Finally, the Court must consider whether Defendant was prejudiced by his confinement. The focus of this inquiry is whether Defendant's ability to defend his case was "impaired" by his delayed transportation. *See Blank*, 701 F.3d at 1090-91 (quoting *Barker*, 407 U.S. at 532). However, Defendant has not argued, and the record does not suggest, that his defense was undermined here. Accordingly, the Court finds that the evidence relevant to the final factor weighs in favor of dismissal without prejudice.

Considering the factors relevant to the prejudice inquiry, the Court holds that the Criminal Complaint shall be dismissed without prejudice.[11]

---

[11] Because this Court finds that dismissal is appropriate under the applicable provisions of the Speedy Trial Act, it will not address the other constitutional arguments raised by Defendant. *See* 18 U.S.C. § 3162(a)(1) (providing an independent and sufficient basis for dismissing a criminal complaint when the Government violates § 3161(b)); *see also St. Joseph Abbey v. Castille*, 700 F.3d 154, 165 n.49 (5th Cir. 2012) (quoting *Burton v. United States*, 196 U.S. 283, 295 (1905)) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.").

### III.  CONCLUSION

The practical reasons underlying the delay in Defendant's transfer are lamentable, notwithstanding the evident frustration expressed by the Government. But Fifth Circuit precedent makes clear that defendants' speedy trial rights cannot be jettisoned simply because the Government has limited resources to comply with its statutory obligations. *See Castle*, 906 F.2d at 137 ("While accepting that the Marshal's Service has budgetary constraints imposed by Congress, prisoners have Speedy Trial Rights also granted by Congress."). Because Defendant's rights under the Speedy Trial Act were violated by his delayed transportation, the Criminal Complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** and **ENTERED** this 17th day of November, 2022.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE